In re Patrick Thomas NEELY, Debtor.

Mary A. Barthen NEELY, Plaintiff,

v.

Patrick Thomas NEELY, Defendant.

Bankruptcy No. 585–00035.
Adv. No. 585–0034.

United States Bankruptcy Court,
D. South Dakota.

March 28, 1986.

Homer Kandaras, Moore & Kandaras, Rapid City, S.D., for plaintiff Mary A. Barthen Neely.

Wm. Jason Groves, Rapid City, S.D., for debtor/defendant Patrick Thomas Neely.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

### Introduction

This matter is before the Court on a complaint to determine dischargeability of a debt filed on behalf of Mary A. Barthen Neely by Attorney Homer Kandaras on December 23, 1985. The complaint substantively alleges that: 1) Debtor's failure to pay to plaintiff/ex-spouse forty percent of his military pension as required by a Dissolution Judgment proviso constituted "defalcation while acting in a fiduciary capacity" under Bankruptcy Code Section 523(a)(4); and 2) the Dissolution Judgment which provided that the plaintiff/ex-spouse receive forty percent of the debtor's military pension was in the nature of support and not property settlement under Bankruptcy Code Section 523(a)(5). Attorney

Wm. Jason Groves represented Patrick Thomas Neely ("debtor"), and a trial was held in Rapid City, South Dakota, on February 25, 1986. The parties submitted pretrial briefs and the Court took the matter under advisement.

### Background

Plaintiff and debtor were divorced in California. The divorce became final on March 19, 1973. Debtor filed for Chapter 7 relief under the Bankruptcy Code on April 4, 1985.

At the trial, three exhibits were introduced on the plaintiff's behalf as evidencing her nondischargeability claims: 1) Interlocutory Judgment of Dissolution of Marriage; 2) Final Judgment of Dissolution of Marriage; and 3) Writ of Execution. No other evidence was presented on the plaintiff's behalf.[1]

Both judgments included provisions which read, in pertinent part, as follows:

No request for written Findings of Fact and Conclusions of Law having been made within the time required by law, and good cause appearing therefor, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

....

2. Respondent, PATRICK T. NEELY, shall pay to petitioner, MARY A. NEELY, for the support and maintenance of said minor child, $125.00 per month, payable on the 1st day of each and every month, beginning January 1, 1973, and continuing until said minor becomes 18 years of age, is emancipated, or until further order of the Court.

3. Eighty percent (80%) of the actuarial value of respondent's Army Retirement benefits, calculated at a discounted value, amounts to the sum of $63,608.93; which is community property; said Retirement Benefits are not immediately payable or realizable, and are subject to termination at the death of respondent; therefore, petitioner, MARY A. NEELY, is awarded one-half (40%) of the commu-

nity property interest (80%) in the Retirement Benefits, which has a present value of $31,804.46, which is established for evaluation purposes only and not as a limit of liability.

....

5. The community property of the parties is awarded as follows:

(a) *To Petitioner, MARY A. NEELY, as her sole and separate property:*

One-half community interest in Army Retirement Benefits of respondent (valued as above)    $ 31,804.46
         Total ................. $ 57,226.44

(b) *To Respondent, PATRICK T. NEELY, as his sole and separate property:*

....

One-half community interest in Army Retirement Benefits of respondent (valued as above)    $ 31,804.47
         Total ................. $ 52,001.84
TOTAL OF COMMUNITY PROPERTY . $109,228.28
One-half of the Community property .. $ 54,614.14
Petitioner, MARY A. NEELY, shall pay to Respondent, PATRICK T. NEELY, to equalize division of community property, the sum of ........ $ 2,612.30

(c) In order to equalize the division of community property, respondent, PATRICK T. NEELY, shall pay to petitioner, MARY A. NEELY, one-half of the community property interest in the Army Retirement Benefits; that is, one-half of 80% of the amount due and payable to him, on a monthly basis until respondent dies. At the present time, the amount respondent shall pay to petitioner is $158.80 per month, which shall be paid by him to her on the 1st day of each month, commencing January 1, 1973, and on the 1st day of each and every month thereafter, and in such other amounts as equals one-half (40%) of the community property interest (80%) of the Army Retirement Benefits.

Although the debtor has made his child support payments, he never sent the plain-

---

1. Plaintiff is a California resident and did not attend the trial.

tiff any part of his retirement benefits. According to the Writ of Execution,[2] the plaintiff secured a judgment against the debtor in the amount of $36,628.71.

The debtor testified that, at the time of their divorce, the plaintiff had a master's degree and, except for a two-year period, she had been employed full-time as a teacher since 1960. He also represented that his retirement benefits were due to both his twenty years of service and a "twenty percent" disability and that he had not been employed during the past five years.

### Issues

The fundamental issues raised are: 1) Whether a debtor's failure to pay his ex-wife part of his military retirement pension benefits as required by a California marriage Dissolution Judgment proviso constitutes "defalcation while acting in a fiduciary capacity" under Bankruptcy Code Section 523(a)(4); and 2) Whether the payments equaling forty percent of the debtor's military retirement pension benefits are in the nature of support under Bankruptcy Code Section 523(a)(5).

### Law

### A. First Issue

As to the first issue, the Court finds that a debtor's failure to pay his ex-wife part of his military retirement pension benefit as required by a California marriage Dissolution Judgment proviso does not constitute "defalcation while acting in a fiduciary capacity" and, therefore, holds that the pre-petition military pension debt is not precluded from discharge under Section 523(a)(4).

**2.** The Writ of Execution was issued by the Superior Court of California, Salinas, California, on September 25, 1984.

**3.** *In re Teichman* involved an Air Force serviceman's (debtor's) failure to make monthly payments to his ex-wife of an amount equal to 43% of his gross monthly retirement benefits as agreed to under a property settlement agreement. As part of this stipulation, he also agreed to arrange for the Air Force to make the payments required by way of military allotment

The Ninth Circuit, in an almost indistinguishable fact situation, recently addressed this question. *In re Teichman*, 774 F.2d 1395 (9th Cir.1985).[3] *See also In re Thomas*, 47 B.R. 27, 33 (Bkrtcy.S.D.Cal.1984); *In re Anderson*, 21 B.R. 335, 337 (Bkrtcy.S.D. Cal.1982). The *Teichman* court, in pertinent part, observed that:

Section 523(a)(4) provides that a discharge under section 727 does not discharge a debtor from any debt 'for ... defalcation while acting in a fiduciary capacity....' In order to prevail, [plaintiff] must establish that [the debtor] not only defaulted on his obligations but did so in violation of a fiduciary agreement (citations omitted).

'Fiduciary capacity' as used in section 523(a)(4) has consistently been construed as describing something created under an express trust, as opposed to a trust created *ex maleficio*, constructively imposed because of the act of wrongdoing from which the debt arises (citations omitted).

While the meaning of 'fiduciary' in section 17a(4) [the predecessor of section 523(a)(4) ] is an issue of federal law, state law, within limits, will be recognized:

[T]he scope of the concept fiduciary under § 17a(4) is a question of federal law. The Supreme Court has repeatedly made clear that the concept is limited to technical trusts ...

On the other hand, state law takes on importance in determining when a trust exists. The state may impose trust-like obligations on those entering into certain kinds of contracts, and these obligations may make a contracting party a trustee.

check directly payable to his ex-wife. The Superior Court of California incorporated this agreement into its final judgment of dissolution. After reviewing both the Bankruptcy Code and California law, the Ninth Circuit affirmed the California bankruptcy and district court's granting the debtor discharge on the amount due prior to the bankruptcy filing but denying discharge on the amount falling due after the filing. 774 F.2d at 1391–1400.

The core requirements are that the relationship exhibit characteristics of the traditional trust relationship, and that the fiduciary duties be created before the act of wrongdoing and not as a result of the act of wrongdoing (citations omitted).

Therefore, unless the property settlement agreement created a trust under California law, the pre-petition payments are dischargeable.

The elements of a valid trust under California law include a competent trustor, an intention on the part of the trustor to create a trust, a trustee, an estate conveyed to the trustee, an acceptance of the trust by the trustee, a beneficiary, a legal purpose, and a legal term (citations omitted).

774 F.2d at 1398–99.

In *Teichman,* as in the instant case, the plaintiff contends that a trust relationship was created under both California's statutory law and its common law. *Id.* at 1399–1400. The statutory argument advanced is that a trust was imposed under Cal.Civ. Code §§ 2223 and 2224.[4] Responding to this argument, the *Teichman* court noted that:

Although the [debtor] in this case may now be classified as a constructive trustee pursuant to California Civil Code sections 2223 and 2224, a constructive trust would be imposed only after the [debtor] has defaulted. This is not sufficient to render the debt non-dischargeable under section 523(a)(4). That section requires the [debtor] to have been acting in a

fiduciary capacity at the time of the default (citations omitted). He was not. *Id.*

This Court agrees with the Ninth Circuit's reasoning and finds the plaintiff's statutory trust argument unpersuasive.

The Court also finds the plaintiff's common law constructive trust argument unpersuasive.[5] This is because the constructive trust is not imposed until after the default and is not a type of trust intended under Section 523(a)(4). *See Id.* at 1399.

### B.  Second Issue

■ As to the second issue, the Court finds that payments equaling forty percent of the debtor's military retirement pension benefits are a property settlement and not in the nature of support as required under Section 523(a)(5).

Bankruptcy Code Section 523(a)(5), in pertinent part, reads as follows:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

(5) to a ... former spouse ... of the debtor, for alimony to, maintenance for, or support of such spouse ... in connection with a separation agreement, divorce decree, or other order of a court of record or property settlement agreement, but not to the extent that—

. . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

---

4. Cal.Civ.Code § 2223 provides:
   INVOLUNTARY TRUSTEE, WHO IS. One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner.
   INVOLUNTARY TRUST RESULTING FROM NEGLIGENCE, ETC. One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.

5. The plaintiff cited *In re the Marriage of Verner,* 77 Cal.App.3d 718, 729, 143 Cal.Rptr. 826 (1978), and *In re the Marriage of Fithian,* 74 Cal.App.3d 397, 404–06, 141 Cal.Rptr. 506 (1972), as standing for the following proposition: "A spouse's community property interest in the other spouse's pension funds is not that of a creditor but that of an owner. Thus the employee-spouse becomes an involuntary trustee of the wrongfully withheld funds, and his or her refusal to pay them into court or to the other spouse can be punished by contempt."

■ In determining whether a particular debt is in the nature of alimony, maintenance, or support, the Court is not bound by the characterization used in the decree but must examine the underlying purpose of the obligation. *In re Williams*, 703 F.2d 1055 (8th Cir.1983); *see also In re Davich*, 27 B.R. 888, 891 (Bkrtcy.D.S.D. 1983); *In re Cleveland*, 7 B.R. 927 (Bkrtcy. D.S.D.1981). Bankruptcy courts may only consider circumstances existing at the time of dissolution and "not the present situation of the parties." *Boyle v. Donovan*, 724 F.2d 681, 683 (8th Cir.1984). State law is often helpful, but what constitutes alimony, maintenance, or support in each case is a question of fact to be determined under bankruptcy law. S.Rep. No. 989, 95th Cong., 2d Sess. 79, *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787, 5865. *See also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 364, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6320. *See, e.g., In re Davich*, 27 B.R. 888 (Bkrtcy.D.S.D.1983); *In re Cleveland*, 7 B.R. 927 (Bkrtcy.D.S.D. 1981).

In addition to the divorce or annulment decree, courts[6] have considered the following factors in making this determination:

1. Whether there was an alimony award entered by the state court.

2. Whether there was a need for support at the time of the decree; whether the support award would have been inadequate absent the obligation in question.

3. The intention of the court to provide support.

4. Whether debtor's obligation terminates upon death or remarriage of the spouse or a certain age of the children or any other contingency such as a change in circumstances.

5. The age, health, work skills, and educational levels of the parties.

6. Whether the payments are made periodically over an extended period or in a lump sum.

7. The existence of a legal or moral "obligation" to pay alimony or support.

8. The express terms of the debt characterization under state law.

9. Whether the obligation is enforceable by contempt.

10. The duration of the marriage.

11. The financial resources of each spouse, including income from employment or elsewhere.

12. Whether the payment was fashioned in order to balance disparate incomes of the parties.

13. Whether the creditor spouse relinquished rights of support in payment of the obligation in question.

14. Whether there were minor children in the care of the creditor spouse.

15. The standard of living of the parties during their marriage.

16. The circumstances contributing to the estrangement of the parties.

17. Whether the debt is for a past or future obligation, any property division, or any allocation of debt between the parties.

18. Tax treatment of the payment by the debtor spouse.

In determining the parties' intent in the instant case, the Court is limited to the record before it. Both dissolution judgments denominate the military pension payments as a settlement of property. Moreover, the child maintenance and support payments are included in a separate paragraph. Finally, the plaintiff apparently had a master's degree and was employed as a full-time teacher at the time of the divorce. The Court notes, however, that it may not properly consider the debtor's present situation in determining whether the payments are in the nature of support. *See Boyle v. Donovan*, 724 F.2d at 683. Because of this, the Court finds that the military pension payments are not in the nature of support, but property settlement and, therefore, holds that the debt is not

**6.** *See In re Coffman*, 52 B.R. 667, 674–75 (Bkrtcy.D.Md.1985). In *Coffman*, Judge Mannes reviewed over thirty decisions in noting these eighteen factors as assisting courts in determining the parties' true intent at the time of the divorce settlement.

precluded from discharge under Section 523(a)(5). *See also* 11 U.S.C. § 727(a).

Accordingly, based on the foregoing, this Memorandum Decision constitutes the Court's Findings of Fact and Conclusions of Law in the above-entitled matter pursuant to Bankr.R.P. 7052 and F.R.Civ.P. 52. Counsel for the debtor is directed to submit a proposed order and judgment in accordance with Bankr.R.P. 9021.