In re Ronald ELLIS, Debtor.

Susan ELLIS, Plaintiff,

v.

Ronald ELLIS, Defendant.

Bankruptcy No. 91–43812–293.
Adv. No. 91–4353.

United States Bankruptcy Court,
E.D. Missouri, E.D.

Jan. 28, 1993.

See also 149 B.R. 925.

Eileen M. Love, Clayton, MO, for plaintiff.

Joseph S. Rosenthal, St. Ann, MO, for debtor/defendant.

Leslie A. Davis, Clayton, MO, Trustee.

James S. Cole, St. Louis, MO, Asst. U.S. Trustee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I), which the Court may hear and determine.

### PROCEDURAL BACKGROUND

(1) On June 7, 1991 Ronald Ellis filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code and on July 8, 1991, the Court entered an order granting Debtor's motion to convert his case to one under Chapter 7 of the Bankruptcy Code.

(2) Susan Ellis filed a Complaint to Determine Dischargeability of a Debt on October 11, 1991 in which she alleged that various obligations the Debtor had under a Dissolution Decree constituted support and as such are nondischargeable under section 523(a)(5) of the Bankruptcy Code. Among the obligations claimed to be nondischargeable in Ms. Ellis's Complaint are the following duties to:

(a) pay $650.00 per month per child to Susan Ellis as child support for the three minor children of the Ellises' marriage;

(b) pay maintenance of $2,250.00 per month to Susan Ellis;

(c) pay Mark Kruger attorney's fees of $15,000.00 and expenses of $839.25 all incurred in his representation of Susan Ellis during the proceedings to dissolve her marriage to Debtor;

(d) pay Allan Zerman, another attorney who represented Ms. Ellis during the proceedings to dissolve her marriage to Debtor, fees of $10,000.00;[1]

(e) take all necessary steps to transfer one-half of all airline mileage credits in his name to Susan Ellis;

(f) carry comprehensive medical and dental insurance for the benefit of Susan Ellis and for the benefit of the minor children, and to pay premiums thereon and to be solely responsible for any dental and medical obligations of Susan Ellis and the children that are not covered by insurance;[2]

(g) pay the outstanding balance due on the debt on Susan Ellis's automobile, and pay, defend and hold her harmless on that debt;

(h) pay, defend, indemnify and hold Susan Ellis harmless on debts to various creditors including: General Bank; Community Federal; Landmark Bank; Boatmen's Bank; Newman, Goldfarb, R.B.G.; Mark Twain Bank; Pioneer Bank & Trust Co.; Internal Revenue Service; Forest Lake Tennis Club; and the Missouri Dept. of Revenue;[3]

(i) pay $3,025.00 representing the attorney's fees Susan Ellis incurred when Debtor appealed the trial court's Decree of Dissolution; and

(j) pay $300,000.00 to Susan Ellis as her interest in Debtor's pension and profit sharing plan.[4]

---

1. The Missouri Court of Appeals reduced the amount of fees granted to Mr. Zerman from $10,000.00 to $3,640.00.

2. The parties' Decree of Dissolution only requires Debtor to provide medical and dental coverage to Susan Ellis for a period of three years and to each child of the marriage through his/her respective minority.

3. At the hearing on this and a related matter, Debtor indicated that he had reached settle-

ments with these creditors and that these debts did not exist as on July 28, 1992.

4. The Dissolution Decree required Debtor to pay this amount in a lump sum, the Missouri Court of Appeals modified the Decree to provide for the payment of this amount in installments, with interest, due in six-month intervals beginning in July of 1991.

(3) The parties filed a Joint Stipulation of Facts and Exhibits on March 16, 1992.

(4) The Court held a hearing on this matter on July 28, 1992, at which time it also heard evidence for a related adversary filed by Mark Kruger in which he asked the Court to deny Ronald Ellis a discharge of debts owed to him representing the attorney's fees Susan Ellis incurred in dissolution proceedings that a state court had ordered Mr. Ellis to pay.

FACTUAL BACKGROUND

After consideration of the parties' joint stipulation of facts, the testimony and a consideration of the record as a whole, the Court makes the following findings of fact:

(1) Ronald and Susan Ellis wed one another in 1970 and separated in 1988.

(2) In six or seven of the ten years immediately preceding the divorce, Mr. Ellis earned in excess of $150,000.00 as a member of the upper level management in the companies for whom he worked. The Missouri Court of Appeals found that the parties, prior to their divorce, had enjoyed a "high standard of living includ[ing] ownership of many expensive automobiles and a high priced home, frequent travel, and membership in exclusive organizations." *Ellis v. Ellis,* 802 S.W.2d 546 (Mo.Ct.App. 1991).

(3) Through the seventeen year course of the parties' marriage, Susan Ellis had not worked outside the parties' home. At the time of the Ellises' divorce, Ms. Ellis lacked formal job training, having only attended three years of college.

(4) Susan was not employed at the time of her divorce from Ronald but shortly thereafter procured part-time employment which paid her $5.50 an hour for 15 to 20 hours a week.

(5) A Decree of Dissolution entered in the St. Louis County Circuit Court on November 29, 1989 dissolved the Ellises' marriage. That Decree, among other provisions, ordered Ronald Ellis to:

(a) pay maintenance to Susan Ellis of $2,250.00 a month;

(b) pay child support to Susan Ellis in the amount of $1,950.00 a month ($650.00 per child);

(c) provide medical and dental insurance for the three children of his marriage to Susan Ellis for the remainders of their minorities;

(d) provide Susan Ellis with medical and dental insurance for three years following the divorce;

(e) pay the outstanding balance due on the debt on Susan Ellis's automobile, and pay, defend and hold her harmless on that debt;

(f) take the steps necessary to transfer half of the parties' frequent flier miles to Susan Ellis; and

(g) pay, defend and hold Susan Ellis harmless on numerous, specified debts.[5]

(6) The Decree dissolving the Ellises' marriage also provided that:

"[a]s and for her partial share of the parties' marital property, Petitioner is awarded Three Hundred Thousand Dollars ($300,000.00) to be paid to her by Respondent, as her interest in Respondent's pension and profit sharing plan with Vantage Footwear, Inc., and Vantage Footwear Inc. Said award shall be deemed a judgement lien against Respondent's interest in said plan and his interest in the stock of Vantage Footwear, Inc., which is held in or by said plan. Respondent shall execute a Qualified Domestic Relations Order consistent with this Decree and the Court retains jurisdiction thereof."

(7) The trial court also awarded attorney's fees to Susan Ellis and ruled that they were in the nature of support.[6]

---

5. At the hearing on this and a related matter, Debtor indicated that he had reached settlements with these creditors and that these debts did not exist as of July 28, 1992.

6. The Missouri Court of Appeals overturned the trial court's holding that the attorney's fees the trial court ordered Ronald Ellis to pay were support on the ground that in Missouri, attorney's fees are separate from and should not be considered maintenance. *Ellis v. Ellis,* 802 S.W.2d 546 (Mo.App.1991) citing *In re Marriage of Jadwin,* 671 S.W.2d 9 (Mo.App.1984).

(8) Debtor stipulated at the hearing on July 28, 1992, that at $4,200.00 a month, approximately the sum Susan Ellis received in maintenance and child support, she could not have paid off the significant debts the Ellises had (that the Decree assigned to Ronald) nor could she have paid the attorney's fees that the Decree ordered Ronald to pay.

DISCUSSION

■ Ms. Ellis bases her claims of nondischargeability on Section 523(a)(5) of the Bankruptcy Code which denies a debtor a discharge of debts owed for child support or maintenance to be paid pursuant to a dissolution decree. *See* 11 U.S.C. § 523(a)(5). The Eighth Circuit has held that the determination of whether an obligation is in the nature of support or in the nature of a property settlement is a question of federal bankruptcy law. *In re Williams,* 703 F.2d 1055, 1056 (8th Cir. 1983). Often attorneys and judges in state court dissolution decrees will use the term maintenance based on tax consideration and ignore whether the obligation is in the nature of support or in the nature of a property settlement. The Eighth Circuit has instructed courts to look to the function an award was intended to serve in deciding whether it represents a property settlement or a maintenance obligation. *Id.* In past decisions this Court has looked to a number of factors for guidance in determining whether an award made in a dissolution decree functions as a property settlement or maintenance. *See e.g., In re Barnett,* 62 B.R. 661, 663 (Bankr.E.D.Mo. 1986). The Court, in applying the eighteen factor test, will not simply tally the number of factors existing in a given case, rather, the Court will merely look to the factors as guides to what function the award was intended to serve.

In this case, some awards made in the Dissolution Decree clearly constitute child support or maintenance. Such awards include:

(a) Ronald Ellis's duty to pay child support of $650.00 per month per child for a total of $1950.00 each month;

(b) Debtor's obligation to pay maintenance to Susan Ellis in the amount of $2,250.00 a month; and

(c) Mr. Ellis's duties to carry comprehensive medical and dental insurance, to pay the premiums on such insurance and to remain solely liable for any medical and dental obligations not covered by insurance for the benefit of the Ellis children for the duration of their respective minorities and to do so for the benefit of Susan Ellis for three years from the time of the divorce.

■ After an examination of the previously mentioned eighteen factors, the Court has concluded that additional obligations the Dissolution Decree imposes upon Debtor are also in the nature of support and maintenance. For example, the Dissolution Decree orders Mr. Ellis to pay attorney's fees to Mr. Zerman who represented Ms. Ellis in the Ellises' dissolution proceedings. The Court believes that this obligation is in the nature of support and maintenance. At the time of the dissolution, Mr. Ellis was an executive whose tax return for the prior year revealed approximately $217,000.00 of income. At that time, Susan Ellis had no job, and more importantly, no job skills. The Debtor conceded at a hearing on this matter that Ms. Ellis could not have paid her attorney his fees from the amount of maintenance she received under the Dissolution Decree. Hence, this Court finds that the award of attorney's fees by the state court[7] that conducted the dissolution proceedings served a maintenance function.[8] Ms. Ellis has also asked this Court to declare nondischargeable the attorney's fees she incurred in defending the Dissolution Decree against Mr. Ellis's appeal that the state

---

7. The state court that conducted the Ellises' dissolution proceedings awarded Mr. Zerman $10,-000.00 in fees. The Missouri Court of Appeals reduced this award to $3,640.00. Therefore, only $3,640.00 is nondischargeable in these proceedings.

8. The Court, in a separate opinion, concluded that the attorney's fees and expenses the state court that conducted the Ellises' dissolution proceedings awarded to Mr. Mark Kruger constitute maintenance and as such are not dischargeable in bankruptcy.

court ordered Mr. Ellis to pay. This Court finds that these fees, like those awarded by the court that presided over the parties' dissolution serve a maintenance function and cannot be discharged in bankruptcy.

■ Similarly, the Court finds that the Decree's order that Mr. Ellis pay and hold Ms. Ellis harmless on certain debts is also in the nature of maintenance and therefore nondischargeable. Again, the Court finds the disparity in the parties' job skills and income potentials indicative of the function this award was intended to serve. Further, Debtor stipulated at the July 28, 1992 hearing on this matter that Ms. Ellis could not have paid these debts from the amount of maintenance she received under the Dissolution Decree. Ms. Ellis's Complaint asks this Court to declare nondischargeable Mr. Ellis's duty to pay the various creditors of the debts the Decree of Dissolution assigned to him. This Court recently used section 523(a)(5) to hold similar obligations to be nondischargeable in *In re Maune*, 133 B.R. 1010 (Bankr.E.D.Mo.1991). For the reasons given in that opinion, the Court believes that Mr. Ellis's duty to pay the debts on which Ms. Ellis is also liable should be nondischargeable and, therefore, will deny him discharge of those debts owed to General Bank, Community Federal, Landmark Bank, Boatmen's Bank, Newman, Goldfarb, R.B.G., Mark Twain Bank, Pioneer Bank & Trust Co., Internal Revenue Service, Forest Lake Tennis Club, and the Missouri Dept. of Revenue on which Ms. Ellis is also liable.[9]

■ The Decree of Dissolution also ordered Mr. Ellis to pay the outstanding balance of the debt due on Ms. Ellis's automobile. Given all the circumstances at the time of the dissolution, the Court finds that this obligation was also in the nature of maintenance.

■ The Dissolution Decree instructed Mr. Ellis to take all steps necessary to transfer to Ms. Ellis, half of the airline mileage credits in his name. Ms. Ellis claims that this duty imposed by the Decree represents maintenance to which the Court should deny Mr. Ellis a discharge. The intent of the lower court and the function of this award clearly indicate that this obligation is a form of property settlement which is subject to discharge in this bankruptcy. Ordinarily, the Court would view Mr. Ellis's duty to transfer the airline mileage credits as one in the nature of a property settlement; however, the frequent flier miles at issue are non-transferrable in the sense that they cannot be liquidated for the benefit of Mr. Ellis's creditors. This being the case, the trustee would likely abandon any interest in the mileage credits and Debtor could assert an interest in them. The Court views this as an inequitable outcome. Failure to enforce the terms of the Dissolution Decree that pertain to the frequent flier miles will create a windfall that will unduly enrich the Debtor. Therefore, the Court will deny discharge of Mr. Ellis's duty to "take all necessary steps to transfer the [airline mileage credits] to a separate mileage account" for Susan Ellis.

■ Finally, Ms. Ellis asks this Court to declare nondischargeable Mr. Ellis's obligation under the Dissolution Decree to pay $300,000.00 to her as her interest in his pension and profit sharing plan. At the hearing on this matter, Ms. Ellis's counsel argued that the plan itself was designed to support the Ellises in the future and that Mr. Ellis was, at that time, supporting himself through the plan and the stock it owned. Therefore, Ms. Ellis's counsel maintained, the $300,000.00 award should be viewed as serving a maintenance function. The Court disagrees. Looking to the eighteen factors to which this Court has previously referred when determining whether an award constitutes maintenance or a property settlement, we find it noteworthy that the state court that conducted the dissolution proceedings awarded this amount to Ms. Ellis in a lump sum.[10] This

---

9. At the hearing on this matter, Debtor indicated that he had settled all these debts and obtained releases from these creditors.

10. The Missouri Court of Appeals modified the Dissolution Decree to provide for the payment of this sum in six-month installments of $50,000.00 plus interest.

indicates that the trial court intended the award to operate as a property settlement. The language of the Dissolution Decree also suggests the trial court intended the $300,000.00 award to serve as a property settlement.[11] The fact that the state court ordered Debtor to pay alimony separate from the $300,000.00 award lends further support to this Court's belief that the $300,000.00 award was a property settlement and not intended to serve a maintenance function. As a property settlement, the debt of $300,000.00 Debtor owes Susan Ellis is dischargeable in bankruptcy.[12]

An Order consistent with this Memorandum Opinion will be entered this date.

## ORDER

For the reasons set forth in the Memorandum Opinion filed this date, it is

ORDERED that the following obligations are held to be NONDISCHARGEABLE:

(1) Debtor's duty to pay child support of $650.00 per month per child for a total of $1,950.00 each month;

(2) Debtor's obligation to pay maintenance to Susan Ellis in the amount of $2,250.00 a month;

(3) Debtor's duty to pay Allan Zerman, attorney who represented Ms. Ellis during the proceedings to dissolve her marriage to Debtor, fees of $3,640.00;

(4) Debtor's duties to carry comprehensive medical and dental insurance, to pay the premiums on such insurance and to remain solely liable for any medical and dental obligations not covered by insurance for the benefit of the Ellis children for the duration of their respective minorities and to do so for the benefit of Susan Ellis for three years from the time of the dissolution;

(5) Debtor's duty to pay, defend, indemnify and hold Susan Ellis harmless on debts to various creditors including: General Bank; Community Federal; Landmark Bank; Boatmen's Bank; Newman, Goldfarb, R.B.G.; Mark Twain Bank; Pioneer Bank & Trust Co.; Internal Revenue Service; Forest Lake Tennis Club; and the Missouri Dept. of Revenue;

(6) Debtor's duty to pay the outstanding balance due on the debt on Susan Ellis's automobile, and pay, defend and hold her harmless on that debt;

(7) Debtor's duty to take all necessary steps to transfer one-half of all airline mileage credits in his name to Susan Ellis; and

(8) Debtor's duty to pay $3,025.00 representing the attorney's fees Susan Ellis incurred when Debtor appealed the trial court's Decree of Dissolution.

IT IS FURTHER ORDERED that Debtor's duty to pay $300,000.00 to Susan Ellis as her interest in Debtor's pension and profit sharing plan is held to be DISCHARGEABLE.[1]

---

11. The Dissolution Decree states, "[a]s and for her partial share of the parties' marital property, Petitioner is awarded Three Hundred Thousand Dollars ($300,000.00) to be paid to her by Respondent, as her interest in Respondent's pension and profit sharing plan with Vantage Footwear, Inc. and Vantage Footwear, Inc."

12. The language of the Dissolution Decree grants Ms. Ellis a judgement lien against Mr. Ellis's interest in the Vantage Footwear Inc. pension and profit sharing plan and his interest in the stock of Vantage Footwear Inc., which is held in or by the plan. The Court's determination of dischargeability of the Debtor's duty to pay $300,000.00 to Susan Ellis does not affect these liens.

1. The language of the Dissolution Decree grants Ms. Ellis a judgement lien against Mr. Ellis's interest in the Vantage Footwear Inc. pension and profit sharing plan and his interest in the stock of Vantage Footwear Inc., which is held in or by the plan. The Court's determination of dischargeability of the Debtor's duty to pay $300,000.00 to Susan Ellis does not affect these liens.